H. LIVINGSTON MOREHOUSE ET AL. *v.* BRIDGEPORT-CITY TRUST COMPANY, ADMINISTRATOR C. T. A. (ESTATE OF OLIVER H. MEEKER)

LOUIS E. MOREHOUSE ET AL. *v.* BRIDGEPORT-CITY TRUST COMPANY, ADMINISTRATOR C. T. A. (ESTATE OF OLIVER H. MEEKER)

MARY C. AMBLER ET AL. *v.* BRIDGEPORT-CITY TRUST COMPANY, ADMINISTRATOR C. T. A. (ESTATE OF OLIVER H. MEEKER)

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and MELLITZ, JS.

Argued June 9—decided August 8, 1950

*Thomas J. Ryle,* for the appellants (plaintiffs Louis E. Morehouse et al.).

*Abraham D. Slavitt,* for the appellants (plaintiffs Ambler et al.).

*Alvin C. Breul, Jr.,* for the appellants (plaintiffs H. Livingston Morehouse et al.).

*Bernard S. Peck,* with whom were *Philip Y. Reinhart,*

*William W. Bent* and, on the brief, *Thomas B. Coughlin, Frederick E. Morgan* and *Norris Rossinoff,* for the appellees (defendants).

INGLIS, J. Oliver H. Meeker, a resident of Fairfield, died July 29, 1947, leaving a last will dated September 18, 1936, the residuary clause of which appears in full in the footnote.[1] The beneficiaries named in the first three numbered paragraphs of that clause predeceased the testator. In entering its order of distribution, the Probate Court decided that the bequests contained in those paragraphs had lapsed and become intestate estate and decreed that the parts of the residuary estate referred to therein should be distributed to the heirs-at-law of the testator. From that decree the heirs and next of kin of the beneficiaries named in those paragraphs took three separate appeals to the Superior Court, which concluded that they should be dismissed. The question here is whether that conclusion is correct or whether the heirs of the named beneficiaries take the

---

[1] "THIRD: I direct the Executor of this my last Will to divide all the rest, residue and remainder of my estate into six (6) equal parts and I give, devise and bequeath said parts as follows.

"1. One of said parts to my cousin, EDWARD B. MOREHOUSE, of Fairfield, Connecticut, to him and his heirs absolutely.

"2. One of said parts to my cousin, WILLIAM S. MOREHOUSE, of York, Pennsylvania, to him and his heirs absolutely.

"3. One of said parts to my cousins, LEWIS R. AMBLER and CHARLES M. AMBLER, of Wilton, Connecticut, sons of my deceased Aunt, Hannah Raymond Ambler, in equal shares, to them and their heirs absolutely.

"4. One of said parts to the heirs of my deceased cousin, JOHN P. MOREHOUSE, late of Fairfield, Connecticut, and their heirs absolutely and forever.

"5. One of said parts to the heirs of my deceased cousin, MATILDA M. BEACH, late of Bridgeport, Connecticut, and their heirs absolutely and forever.

"6. One of said parts to SARAH W. WOOD, my cousin, of Southport, Connecticut, daughter of my deceased cousin, Sarah M. Wakeman, and her heirs absolutely and forever."

respective bequests as substituted beneficiaries.

The determination of that issue presents the primary question whether the testator intended the words "to him and his heirs absolutely" or "to them and their heirs absolutely" to be taken as words of limitation or as words of purchase. It was very early decided that a devise to a person "and his heirs" would lapse if the devisee predeceased the testator because the words "and his heirs" fixed the quantity of the estate devised and were not to be construed as words of purchase. *Brett* v. *Rigden*, 1 Plowd. 340, 345, 75 Eng. Rep. 516 (1568). The rule thus established has become firmly fixed in the common law. It was recognized in this state in *Jackson* v. *Alsop*, 67 Conn. 249, 254, 34 A. 1106, although there the reason for holding the words "and his heirs" to be words of limitation was fortified by the fact that in the will they were followed by the words "and assigns." The case of *Hartford-Connecticut Trust Co.* v. *Lawrence*, 106 Conn. 178, 138 A. 159, is not to the contrary because, by the express provision of the will involved, the heirs of the deceased beneficiary were named as substituted beneficiaries. The same may be said of *Bond's Appeal*, 31 Conn. 183, 190, because there the word "respectively" was added to the words "their heirs" in the will in such a context that it was plain that the testator had intended to designate the heirs of four children who were deceased when the will was executed. It is true that, when originally laid down, the rule that the words "and his heirs" are to be construed ordinarily as words of limitation applied to devises of real estate and that at common law there were reasons for its application to devises which would not have controlled its application to bequests of personalty. However, it became so firmly fixed in the law that in modern times no distinction is made between devises and bequests. The purpose is always to ascertain the intent

expressed in the will. *Reaney* v. *Wall*, 134 Conn. 663, 666, 60 A. 2d 505; *Sadler* v. *Sadler*, 107 Conn. 409, 414, 140 A. 639; *Jackson* v. *Alsop*, supra, 253. It is quite uniformly held, unless the rule is modified by statute or the will as a whole indicates otherwise, that when a testator uses the phrase "and his heirs" after the name of the beneficiary in either a devise or a bequest his intention is to define the estate which he is giving rather than that the heirs shall be substituted beneficiaries. *Farnsworth* v. *Whiting*, 102 Me. 296, 300, 66 A. 831; *Wood* v. *Seaver*, 158 Mass. 411, 412, 33 N. E. 587; *Horton* v. *Earle*, 162 Mass. 448, 450, 38 N. E. 1135; *Van Beuren* v. *Dash*, 30 N. Y. 393, 416; notes, 78 A. L. R. 992, 128 A. L. R. 94.

There is nothing in the will now before us to indicate that the testator intended that the phrases in question should serve any purpose other than to define the quantity of the estates bequeathed to the beneficiaries named. It is suggested by the plaintiffs that there is a double significance in the provisions of paragraphs (4) and (5) of the residuary clause. Each of these paragraphs bequeaths one of the six parts of the residuary estate to the heirs of a deceased cousin of the testator. In the first place, it is contended that in those paragraphs the testator clearly uses the word "heirs" as a word of purchase, and the argument from that is that he intended to use the same word with the same meaning in paragraphs (1), (2) and (3). That argument is fallacious because of the fact that when, in paragraphs (4) and (5), the testator uses "heirs" as a word of purchase, it is not in the phrase "to him and his heirs absolutely," as it is in paragraphs (1) and (2), or in the phrase "to them and their heirs absolutely," as it is in paragraph (3). Moreover, in each of paragraphs (4) and (5) he uses the word "heirs" a second time, in the phrase "and their heirs absolutely and forever." This

latter phrase is clearly used to define the estate to be taken by the "heirs of . . . John P. Morehouse" and the "heirs of . . . Matilda M. Beach." They are words of limitation, not words of purchase, and they are substantially the same as the words in question in paragraphs (1), (2) and (3). It must have been the testator's intention to use them with the same meaning and for the same purpose. If they were used as words of limitation in paragraphs (4) and (5), it must have been the testator's intention to use them as words of limitation in paragraphs (1), (2) and (3). So far from supporting the contention of the plaintiffs that the phraseology of paragraphs (4) and (5) indicates an intention that the words are used as words of purchase in paragraphs (1), (2) and (3), that phraseology, in reality, indicates the contrary.

In the second place, it is contended that paragraphs (4) and (5) indicate that it was the testamentary plan of the testator to substitute in every case the heirs of any cousin for that cousin if he should predecease the testator. The force of that contention is weakened by the fact that in paragraph (6) a bequest is made to a daughter of one of his cousins who had died before the making of the will rather than to the heirs of that cousin. On the whole, therefore, it would appear that the testator's plan was in general to divide his residuary estate among his six cousins or some representatives of each of them, but with the qualification that those who were to take in each branch of the family were determined and ascertainable at the time the will was executed. In other words, he preferred to leave his property to specific persons who were known to him at the time he made his will rather than to persons who could not be ascertained at that time. A bequest to the heirs of any cousin who was alive at the time the will was made but who might die before the testator would

have been a bequest to persons who might not have been known to the testator when his will was executed. In any event, there is nothing in paragraphs (4) and (5) to overcome the presumption that in using the phrase "to him and his heirs" in paragraphs (1) and (2) and the similar phrase in paragraph (3) he intended thereby simply to define the estate bequeathed.

The plaintiffs also make a point of the fact that the word "absolutely" is appended to each of the phrases in question. Their argument is that that word in itself is adequate to describe an estate in fee and that if the words "and his heirs" or "and their heirs" were also intended to define the estate to be taken there was a redundancy. If we grant that that is so, it does not follow that the word "heirs" in each case is a word of purchase. The will obviously was drawn by an experienced scrivener. There is no comma in any of the paragraphs between "heirs" and "absolutely." The words "to him and his heirs absolutely" are to be read together as one phrase. When that is done, it becomes apparent that the purpose of the word "absolutely" is to make more certain and emphasize the rest of the phrase. Accordingly, the presence of the word "absolutely," so far from indicating an intent that the heirs should be substituted legatees, in reality demonstrates that the intent of the phrase as a whole in each case was to describe the estate which was to be taken by the named beneficiary.

There is at least one other consideration which points to the conclusion that the testator intended these words to be words of limitation. The bequests are to the named beneficiary, "to him and his heirs," or to the named beneficiaries, "to them and their heirs." The preposition "to" is used twice in each bequest and, in each instance, the second time it is used it is followed immediately by the personal pronoun referring to the

named beneficiary. Such an expression is more convincing than it would have been if, after naming the beneficiary, it had read simply "and his heirs" or even "and to his heirs." If it had read the latter way, in order to make "heirs" a word of purchase the word "and" would have to be read as "or." That might possibly have been done if the context called for it. *Phelps* v. *Bates*, 54 Conn. 11, 16, 5 A. 301. But here the preposition "to" precedes "him" or "them." The bequest is made to the beneficiary, "to him and his heirs," or to the beneficiaries, "to them and their heirs." That can mean only one thing. The bequest is made to the named beneficiary, and the interest which he is to take is one "to him and his heirs absolutely."

On the will as a whole, therefore, it is apparent that the expressed intention of the testator was to make bequests in the three paragraphs in question of absolute estates to the named beneficiaries, and not to make substituted bequests to their respective heirs in the event that the named beneficiaries predeceased him. The bequests lapsed by reason of the deaths of the beneficiaries. *Jackson* v. *Alsop*, 67 Conn. 249, 254, 34 A. 1106; *Bolles* v. *Smith*, 39 Conn. 217, 219. Being bequests of the residuary estate, the amounts thereof became intestate. *Bill* v. *Payne*, 62 Conn. 140, 142, 25 A. 354. A construction plainly required by the terms of a will cannot be avoided because it leads to intestacy. *Jackson* v. *Alsop*, supra.

The plaintiffs assign as error several rulings of the trial court excluding evidence of circumstances surrounding the testator at the time he made his will. This evidence was offered as tending to prove the intention of the testator. Aside from the fact that some of the evidence offered was hearsay, the controlling consideration is that there was no latent ambiguity in the will. That is, there was no ambiguity which arose by reason

of there being two or more persons of the same name or description only one of whom the testator intended as the object of his bounty, or by reason of a question of what it was that the testator intended to bequeath. The only question was what intention the testator expressed in the will, and that was to be determined from the will itself. Upon that question no extraneous testimony was admissible. *Griswold* v. *First National Bank,* 134 Conn. 410, 417, 58 A. 2d 256; *Stearns* v. *Stearns,* 103 Conn. 213, 220, 130 A. 112; *Day* v. *Webler,* 93 Conn. 308, 311, 105 A. 618; *McDermott* v. *Scully,* 91 Conn. 45, 48, 98 A. 350; *Jackson* v. *Alsop,* supra, 252. The ruling of the trial court on the proffer of this evidence was correct.

There is no error.

In this opinion the other judges concurred.